[Cite as *State v. Flaningan*, 2014-Ohio-1155.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NOS. 2013-P-0033 and 2013-P-0034** |
| DAVID M. FLANINGAN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeals from the Portage County Municipal Court, Kent Division, Case No. K 2011 CRB 1329.

Judgment: Reversed and remanded.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Noah C. Munyer,* 135 Portage Trail, Cuyahoga Falls, OH 44221 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, David M. Flaningan, appeals his convictions for Assault and Resisting Arrest following a bench trial in the Portage County Municipal Court, Kent Division. The issue before this court is whether a defendant had validly waived his right to a jury trial where the written waiver was signed by the defendant's attorney rather than by the defendant, and where the trial court did not address the defendant in open court and have him acknowledge the waiver of his right to a jury trial.

For the following reasons, we reverse the decision of the lower court and remand this matter for further proceedings consistent with this opinion.

{¶2} On July 6, 2011, a Complaint was filed against Flaningan in the Portage County Municipal Court, Kent Division, charging him with Assault, a misdemeanor of the first degree in violation of R.C. 2903.13(A) (Case No. 2011 CR B 01329 K). On the same date in the same court, another Complaint was filed against Flaningan, charging him with Resisting Arrest, a misdemeanor of the second degree in violation of R.C. 2921.33(A) (Case No. 2011 CR B 01330 K).

{¶3} On July 7, 2011, Flaningan appeared for arraignment and entered a plea of not guilty to both charges.

{¶4} Flaningan's cases were scheduled for a jury trial to commence on November 6, 2012.

{¶5} On November 2, 2012, trial counsel for Flaningan filed a Withdrawal of Demand for Jury (R.C. 2938.05). The document was signed by counsel on Flaningan's behalf, as indicated by counsel's initials under Flaningan's purported signature. On the same day, the municipal court granted the request.

{¶6} On November 6 and 7, 2012, Flaningan's cases were tried before the municipal court. At trial, the following witnesses testified:

{¶7} Curtis McDaniel testified that, on July 6, 2011, he was a student at Kent State University, residing at 114 East Crain Avenue. McDaniel was waiting for the arrival of a friend to drive him to a laundromat. At some time after 11 p.m., McDaniel went outside and found his friend's car stopped in front of the driveway. Three people on foot were blocking the vehicle, screaming and yelling. McDaniel approached asking

2

what was going on and telling them to leave. One of the persons began to walk "aggressively" toward McDaniel while shouting threats. McDaniel shoved her to the ground, believing her to be a male. Another person approached and tried to tackle McDaniel. After struggling for a few seconds, McDaniel fell to the ground.

{¶8} Once on the ground, McDaniel was kicked by all three pedestrians. McDaniel identified Flaningan as one of his assailants. McDaniel specifically recalled Flaningan "kicking [him] while [he] was down * * * in the back."

{¶9} After the assailants allowed McDaniel to return to his feet, he called the police. McDaniel noted that Flaningan ran towards a pet shop near his house.

{¶10} Officer Jerry Schlosser of the Kent Police Department testified that, on the night in question, he was dispatched to 114 East Crain Avenue to investigate an assault. Officer Schlosser arrived as the suspects were leaving the area. He determined that the persons involved in the assault, as identified by McDaniel, were India Scott, James Ritenour, and David Flaningan. Officer Schlosser placed Ritenour under arrest, and advised other officers that Flaningan and Scott should be arrested.

{¶11} Sergeant Jason Short of the Kent Police Department testified that, on the night in question, he responded to a dispatch regarding an assault. Sergeant Short encountered Flaningan and Scott on Lake Avenue. Both were intoxicated. Scott attempted to leave the scene, was handcuffed, and placed in a police cruiser. Sergeant Short advised Flaningan that he was under arrest. Flaningan resisted. After a struggle involving several officers, Sergeant Short was able to handcuff Flaningan and place him under arrest.

{¶12} Officers Nicole Lipcsey, Ryan Gaydosh, and Martin Gilliland of the Kent Police Department testified that, on the night in question, they assisted Sergeant Short in subduing Flaningan.

{¶13} David Flaningan testified that he resided at 118 Lake Avenue. On the night in question, he and his friends, Ritenour, Scott, and Elizabeth Polk, were walking toward a restaurant. As they were passing in front of McDaniel's residence, Scott became involved in a verbal altercation with someone trying to pull in the driveway. McDaniel came out of the house and pushed Scott to the ground. As McDaniel menacingly approached her on the ground, Ritenour detained him and took him to the ground. Flaningan went to aid Ritenour, but fell down before he reached the point where Ritenour and McDaniel were struggling. Ritenour told Flaningan to go home, and he did so. Flaningan denied that he, Ritenour, or Scott kicked McDaniel.

{¶14} Thereafter, Flaningan heard Scott arguing with police officers and came out of his Lake Avenue house. The officers told him that he was coming with them, but did not say that he was under arrest. The officers smacked a cigarette out of his hand, grabbed him, and yanked him from his porch. Flaningan denied resisting the officers, although he "struggle[d] with the officers * * * concurrent [sic] with how they treated [him]."

{¶15} Patrick Flaningan, David's father, testified regarding an "animated" encounter he had with McDaniel at McDaniel's residence several days after the incident with his son, Ritenour, and Scott.

{¶16} Elizabeth Polk testified regarding the night in question. She testified that, after McDaniel had pushed Scott into the street, Ritenour grabbed McDaniel by the

waist and McDaniel began punching Ritenour in the head. Flaningan became involved by trying to pull Ritenour off McDaniel. After the police arrived, Polk recalled seeing officers hold Flaningan by the arms and legs while they beat him with batons.

{¶17} On December 5, 2012, the municipal court found Flaningan guilty of Assault and Resisting Arrest.

{¶18} On February 8, 2013, Flaningan filed a Motion for New Trial.

{¶19} On March 8, 2013, the municipal court denied Flaningan's Motion for New Trial.

{¶20} On April 5, 2013, the municipal court ordered Flaningan to pay a $1,000 fine and serve 180 days in jail, with $900 of the fine and 180 days of the jail sentence suspended upon conditions.

{¶21} On April 16, 2013, Flaningan filed Notices of Appeal from each conviction, assigned Appeal Nos. 2013-P-0033 and 2013-P-0034.

{¶22} On April 22, 2013, this court, sua sponte, consolidated the appeals for purposes of briefing, oral argument, and disposition.

{¶23} On appeal, Flaningan raises the following assignments of error:

{¶24} "[1.] The defendant's jury trial waiver was not knowing, voluntary, or intelligent."

{¶25} "[2.] The defendant was denied the effective assistance of counsel."

{¶26} "[3.] The trial court erred in denying defendant's motion for a new trial."

{¶27} Flaningan's first assignment of error is dispositive of this appeal.

{¶28} The Sixth Amendment to the United States Constitution and Article I, Section 10, of the Ohio Constitution guarantee a criminal defendant the right to trial by

5

impartial jury. The right to trial by jury may be waived. R.C. 2945.05; *State v. Ruppert*, 54 Ohio St.2d 263, 271, 375 N.E.2d 1250 (1978).

{¶29} Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. * * * Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel. Such waiver may be withdrawn by the defendant at any time before the commencement of the trial.

R.C. 2945.05; *State v. Lomax*, 114 Ohio St.3d 350, 2007-Ohio-4277, 872 N.E.2d 279, paragraph one of the syllabus; *State v. Tate*, 59 Ohio St.2d 50, 391 N.E.2d 738 (1979), syllabus ("[w]here a defendant in a petty offense case has a right to trial by jury and pleads not guilty and demands a jury trial in the manner provided by Crim.R. 23(A), it must appear of record that such defendant waived this right in writing in the manner provided by R.C. 2945.05, in order for the trial court to have jurisdiction to try the defendant without a jury"), *limited by State ex rel. Larkins v. Baker*, 73 Ohio St.3d 658, 653 N.E.2d 701 (1995); *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 26 (the failure to comply with R.C. 2945.05 does not involve a trial court's subject matter jurisdiction but, rather, its exercise of jurisdiction).

{¶30} "To satisfy the 'in open court' requirement in R.C. 2945.05, there must be some evidence in the record that the defendant while in the courtroom and in the presence of counsel, if any, acknowledged the jury waiver to the trial court." *Lomax* at paragraph two of the syllabus. "[A] trial court does not need to engage in an extended colloquy with the defendant in order to comply with the statutory requirement that a jury

6

waiver be made in open court." *Id.* at ¶ 42. However, "[t]here must be * * * some evidence in the record of the proceedings that the defendant acknowledged the waiver to the trial court while in the presence of counsel, if any." *Id.* "Absent such evidence, the waiver does not comply with the requirements of R.C. 2945.05 and is therefore invalid." *Id.*

{¶31} In the present case, Flaningan's jury trial waiver is defective in two respects. It was not personally signed by Flaningan. There is no evidence that Flaningan acknowledged the waiver in open court. Both defects have been found to render the waiver invalid.

> Where a defendant charged with a petty offense demands a trial by jury, only the defendant, himself, is empowered to waive the previously requested jury trial and only in writing in accordance with R.C. 2945.05. Thus, neither the defendant's silent acquiescence to a non-jury trial nor purported written or oral waivers by defense counsel or the court are adequate.

*State v. Cheadle*, 30 Ohio App.3d 253, 507 N.E.2d 426 (3rd Dist.1986), syllabus; *State v. Smith*, 38 Ohio App.3d 149, 150, 528 N.E.2d 591 (2nd Dist.1987).

{¶32} The failure to have the defendant personally sign the waiver is compounded by the municipal court's failure to address the defendant and have him acknowledge the waiver in open court. The following principle applies to the present case, although in petty offense cases a full explanation of the jury right is not required:

> A jury waiver signed by the defendant's attorney and filed prior to trial in a serious offense case does not constitute a knowing, intelligent and

7

voluntary waiver by the defendant of defendant's constitutional right to trial by jury where there is nothing in the record showing that the defendant received a full explanation of, and understood, his right to trial by jury.

*State v. Kehoe*, 59 Ohio App.2d 315, 394 N.E.2d 1022 (9th Dist.1978), syllabus; *compare United States v. Robertson*, 45 F.3d 1423, 1432-1433 (10th Cir.1995) (counsel's signing of the jury waiver on behalf of a defendant is "not necessarily fatal" provided the court "inform[s] defendants, on the record, of the nature of the right to trial by jury and the consequences of waiving that right").

{¶33} The State concedes that Flaningan's waiver argument is "technically meritorious," but contends that the result exalts form over substance. We disagree. The Ohio Supreme Court has explained that waiver is not a matter of "magic words" or a "prolonged colloquy," but simply a matter of complying with what Ohio law intends: "that a defendant while in the courtroom * * * acknowledge to the trial court that the defendant wishes to waive the right to a jury trial." *Lomax*, 114 Ohio St.3d 350, 2007-Ohio-4277, 872 N.E.2d 279, at ¶ 48s; *State v. Burnside*, 186 Ohio App.3d 733, 2010-Ohio-1235, 930 N.E.2d 372, ¶ 73; *compare Tate*, 59 Ohio St.2d at 55, 391 N.E.2d 738 (Holmes, J., concurring) (suggesting that the General Assembly amend R.C. 2945.05 in cases involving petty crimes to avoid "obvious courtroom sandbagging perpetrated upon the trial judge by the defendant and his trial counsel").

{¶34} The municipal court failed to assure that Flaningan's constitutional right to a jury trial was properly protected. The municipal court committed clear error.

{¶35} The first assignment of error is with merit.

{¶36} The second and third assignments of error are overruled as moot.

{¶37} For the foregoing reasons, Flaningan's convictions for Assault and Resisting Arrest are reversed and this case is remanded for further proceedings consistent with this opinion.  Costs to be taxed against the appellee.


CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.